(31 Misc. Rep. 187.)

FRANCIS v. TAYLOR.

(Supreme Court, Special Term, New York County. April, 1900.)

1. JOINT-STOCK COMPANIES—DISSOLUTION—POWER OF DIRECTORS.
    Directors of a joint-stock company have power to dissolve for the company as provided by its articles of association, since such associations are creatures of contract, and not of the state.

2. SAME.
    A stockholder of a joint-stock company is not compelled to accept the stock of a foreign corporation for his interest in the concern on dissolution, where he is offered his choice between such stock and a money payment based on an adequate valuation of its assets.

3. SAME.
    A joint-stock company has the right to liquidate its affairs on dissolution by a sale in bulk of its property, where, from the nature of its business, any other sale would result in loss to stockholders.

4. MONOPOLY.
    The absorption of the business of a joint-stock company by a rival corporation is not obnoxious to the law as creating a monopoly, where the plan involves no restraint upon the stockholders or others from freely engaging in the same business.

5. INJUNCTION—GROUNDS.
    The dissolution of a joint-stock company, as provided by its articles of association, will not be enjoined in the absence of a showing that the transaction involves a scheme to injure minority stockholders.

Action by William H. N. Francis against James D. Taylor, as treasurer of the Wagner Palace-Car Company, and others. Plaintiff moved for an injunction pendente lite. Motion denied.

George H. Yeaman and John W. Hutchinson, Jr., for plaintiff.
Samuel E. Williamson and Lewis Cass Ledyard, for defendants.

BEEKMAN, J. This is a motion for an injunction pendente lite. The defendants are sued as officers of the Wagner Palace-Car Company, a voluntary unincorporated association, of which the plaintiff

is a stockholder, holding 100 shares, of the par value of $100 each. The object of the action is to prevent the dissolution of the association, and the consummation of a sale of the business and assets of the association to the Pullman Palace-Car Company, which the defendants propose to effect as liquidators of its affairs. It is claimed that the directors of the Wagner Palace-Car Company have no power to dissolve the company, and an attempt is made to bring the case within the law in that regard applicable to corporations. The answer to this is that associations such as this are not corporations. The latest review of the subject by the court of appeals is found in People v. Coleman, 133 N. Y. 279, 31 N. E. 96, where Judge Finch, after an elaborate discussion of the question, states the difference between a joint-stock association and a corporation in the following words (page 287, 133 N. Y., and page 98, 31 N. E.):

"The one derives its existence from the contract of individuals; the other from the sovereignty of the state. The two are alike, but not the same. More or less they crowd upon and overlap each other, but without losing their identity; and so, while we cannot say that the joint-stock company is a corporation, we can say, as we did say in Van Aernam v. Bleistein, 102 N. Y. 360, 7 N. E. 537, that a joint-stock company is a partnership with some of the powers of a corporation. Beyond that we do not think it our duty to go."

See, also, Id. (Sup. Gen. Term) 13 N. Y. Supp. 833; also, Id. (Sup. Sp. Term) 5 N. Y. Supp. 394. The joint-stock association law (chapter 235, Laws 1894) also clearly shows this. The association is the creature of contract, and not of the state, and whatever the contract contains which is not of itself unlawful constitutes a part of the law of its being. Section 5 of the above-mentioned law declares that "a joint-stock association shall not be dissolved except in pursuance of its articles of association, or by consent of all its stockholders, or by judgment of a court for fraud in its management, or for good cause shown." The right, then, of the associates to contract with respect to the dissolution of their organization is indubitable. The articles of association of the Wagner Palace-Car Company provide that the board of directors shall have power, "and is hereby expressly authorized at any time, whenever it may be deemed for the best interests of the said company, by a resolution passed by a unanimous vote of all the members thereof, to dissolve said stock company, provided a notice of sixty days of the intention to dissolve said company shall have been previously given to the shareholders, and such dissolution is not objected to by a majority in interest thereof; and in case of such dissolution, or any termination of said company, said directors are hereby expressly authorized, by themselves or by their attorney or attorneys, to adjust, settle up, and liquidate the business and affairs thereof." The notice above required has been given and the dissolution has been assented to by stockholders owning 187,178 shares out of a total of 198,695 shares which are outstanding, and the sale to the Pullman Palace-Car Company of the assets of the Wagner Company in liquidation of its affairs has also been so proved. Out of the entire body of shareholders the plaintiff alone, representing only 100 shares, has made any objection to the action of the directors. The proposed sale of

the assets and the good will of the association to the Pullman
Palace-Car Company is based upon an actual valuation made by the
directors, which is measured by the sum of $180 for each and every
share of the issued and outstanding shares of the capital stock of
the Wagner Company, and payment therefor is to be made by the
issue of $200,000 shares of the Pullman Company of the par value
of $100 a share, such stock to be issued to the directors of the
Wagner Company as liquidating trustees after the dissolution of
that association. In order, however, to meet the case of stockhold-
ers who may be unwilling to accept such shares, provision is made
for the payment to them of cash at the rate of $180 for each share
held by them. There is no evidence before me tending to show that
the valuation of the property by the directors is insufficient, or that
the proposed disposition of the property is an improvident one; nor
is there any claim that the transaction involves any scheme to injure
and oppress minority stockholders for the aggrandizement of the
majority. Indeed, upon the papers, the plan of liquidation and
the consideration to be paid for the property seem to be reasonable,
fair, and adequate. The fact that nearly 95 per cent. in value of the
stockholders have assented to the plan is of itself most persuasive
of its beneficial character.

It is claimed that the scheme compels the plaintiff to accept the
stock of a foreign corporation for his interest in the property. If
that were the case, his complaint would certainly be well founded,
as was held in Frothingham v. Barney, 6 Hun, 366; but that is not
the case here. He is offered his choice between stock and a money
payment based upon a valuation of the property as an element of
the transfer expressed in its distributive portions at $180 a share,
the adequacy of which is not questioned.

The right to liquidate the affairs of the company by a transfer
in bulk of its property seems also to be questioned, but it is quite
apparent that, from the very nature of the business, any sale of
the property, except as a going concern, would result in such dis-
aster to the stockholders as to be absolutely inadmissible. Where
the circumstances of the case are of such a character as to require a
sale in this manner in liquidation of co-partnership affairs, I know
of no reason or authority which forbids it.

It is also claimed that the proposed issue of stock of the Pullman
Company is unlawful under the laws of the state of Illinois, where
the corporation has its domicile. But there is no evidence before
me that such is the case.

It is also urged that the absorption of the Wagner Company by
the Pullman Company will create a great monopoly of the business
in which it is alleged they have been rivals. I fail, however, to
see that this would be the result in any sense which is obnoxious
to the law, as the plan in question in no way involves any restraint
upon others from freely engaging in the same kind of business. It
is contended here, on behalf of the defendants, that the chief merit
of the proposed absorption of the business of the Wagner Company
by the Pullman Company is in the reduction of administrative ex-
penses, and greater effectiveness in management, and that there is

a corresponding benefit, not only to those immediately interested in the business, but to the public as well, as the tendency of such conditions is towards a reduction of charges for the service rendered. This contention is borne out by the observed results of similar aggregations of business enterprises under one control, which has become one of the economic features of the present day. There seems to be nothing, then, in the proposed transfer here which is injurious to the public interests.

The fundamental objection of the plaintiff, however, seems to be addressed to the dissolution of the association; but, at best, this involves a mere difference of judgment between himself and the defendants. He may be correct in his view, but the determination of the question rests in their judgment, by the terms of the articles of agreement on which the association rests for its fundamental law,—a compact by which all of the stockholders are bound. The authority to dissolve it is theirs, and when exercised in the manner agreed upon the act is unquestionably legal.

I am satisfied that no case is presented for the granting of an injunction during the pendency of the action. I recognize the right of any stockholder to the remedies which the law affords him for the redress of any wrong which he may suffer, irrespective of his motive in purchasing the stock; but, where the vast majority of the general body of the stockholders approve of the action which is the subject of assault, the existence of the wrong should be very clearly established, and the necessity for injunctive relief for the adequate protection of the plaintiff's rights should be manifest, before the drastic remedy applied for should be issued. The motion for an injunction is denied, with $10 costs.

Motion denied, with $10 costs.