(158 App. Div. 377.)

SPRAKER v. PLATT et al.

(Supreme Court, Appellate Division, Third Department. September 10, 1913.)

1. JOINT-STOCK COMPANIES (§ 1*)—NATURE AND STATUS.

An unincorporated joint-stock association, organized before Laws 1854, c. 245, authorizing the formation of joint-stock companies, went into effect, is a valid legal entity under the common law, with the right to extend its existence as it sees fit; it exists by virtue of its articles of association and not by statute.

[Ed. Note.—For other cases, see Joint-Stock Companies, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. JOINT-STOCK COMPANIES (§ 4*)—ELECTIONS—VALIDITY OF ARTICLES—ELECTION OF DIRECTORS BY BOARD OF DIRECTORS.

The articles of a joint-stock company, providing for the election of directors to fill vacancies by the board of directors, and authorizing an election by the stockholders for directors only upon petition therefor signed by the holders of two-thirds of the stock, intended to secure stability in the management of its affairs, are valid though they make the board a self-perpetuating body.

[Ed. Note.—For other cases, see Joint-Stock Companies, Cent. Dig. § 4; Dec. Dig. § 4.*]

3. JOINT-STOCK COMPANIES (§ 16*)—ELECTION OF DIRECTORS—PROXIES.

A holder of shares in a joint-stock company has the right to empower, by proxy · or otherwise, another shareholder, though the latter may be a director, to cast his vote at an election to fill a vacancy in the board of directors, and no statutory authority is necessary therefor.

[Ed. Note.—For other cases, see Joint-Stock Companies, Cent. Dig. § 16; Dec. Dig. § 16.*]

4. JOINT-STOCK COMPANIES (§ 16*)—ELECTION OF DIRECTORS—CALLING ELECTION.

Where the articles of a joint-stock company provide that vacancies in the board of directors shall be filled by the board except when the holders of two-thirds of the stock shall petition for a stockholders' election, the election by the board of two directors having interests antagonistic to the company, in violation of the articles, is not ground for ordering an election of a new board by the stockholders, though it may justify a decree declaring the election void.

[Ed. Note.—For other cases, see Joint-Stock Companies, Cent. Dig. § 16; Dec. Dig. § 16.*]

5. JOINT-STOCK COMPANIES (§ 10*)—MEMBERS—NOTICE OF PROVISIONS OF ARTICLES—BINDING EFFECT.

Where the certificate issued to a purchaser of stock in a joint-stock company recites that by its acceptance the holder becomes a member subject to the terms of the articles and amendments. thereto, such purchaser and the shares so purchased are subject to the provisions of the articles as fully as though he were one of the original subscribers to the articles.

[Ed. Note.—For other . cases, see Joint-Stock Companies, Cent. Dig. § 10; Dec. Dig. § 10.*]

6. JOINT-STOCK COMPANIES (§ 4*)—ARTICLES—CONSTRUCTION.

The articles of association of a joint-stock company are to be read in the light of the conditions existing at the time they were made.

[Ed. Note.—For other cases, see Joint-Stock Companies, Cent. Dig. § 4; Dec. Dig. § 4.*]

Kellogg, J., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Montgomery County.

Suit by Benjamin F. Spraker against Thomas C. Platt as president of the United States Express Company and others for an injunction, an accounting, and other relief. From a judgment for plaintiff, defendants appeal. Reversed, and complaint dismissed upon the merits.

See, also, 142 App. Div. 924, 126 N. Y. Supp. 1147.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Stetson, Jennings & Russell, of New York City, for appellant Stetson.

O'Brien, Boardman & Platt, of New York City (Morgan J. O'Brien and George W. Field, both of New York City, of counsel), for other appellants.

Andrew J. Nellis, of Albany, for respondent.

LYON, J. The question involved upon this appeal is as to the right of the court to direct the holding of a meeting of the shareholders of the United States Express Company, a joint-stock association, for the purpose of electing a board of directors.

The United States Express Company was organized in this state, under the common law, April 22, 1854, for the purpose of prosecuting a general express forwarding business in this and foreign countries. Its original capital stock was $500,000 divided into shares of $100 each. The five organizing members contributed the full capital stock and constituted its first board of directors. The articles of association, among other things, provided that the organization should continue for ten years from May 1, 1854, but might be dissolved at any time by a unanimous resolution of the board of directors; that the board of directors might at any time increase or decrease the number of shares of the capital stock; that such shares should be represented by certificates which should be assignable in the usual form; that each share should be subject to assessments for damages, losses, or expenses which might accrue in the prosecution of its business, which fact should be specified in the certificates representing the shares, and in the event of the failure of any member to pay any assessment for losses, damages, or expenses accruing in the course of the business of the company, which the directors were authorized to impose upon each and every shareholder, so many of the shares of the member as might be requisite to pay his assessment might be forfeited and sold; that such certificates should contain an agreement constituting every assignee thereof a member of the association, subject to all the liabilities and entitled to all the benefits of any other member thereof accruing after the date of the assignment as completely as though the shareholder had signed the original articles of association; that the board of directors should have the power to declare dividends out of the net earnings of the company as they might deem expedient; and that in case of the death of any shareholder the survivors should have the right to purchase and take the shares of the deceased sharehold-

er at the actual value thereof at the time of his decease, unless the heirs of such deceased shareholder should be of age and legally competent to act and should elect to retain and hold such shares in conformity with said articles of association. Such articles of association further provided that the board of directors should elect by ballot from their own body a president, vice president, and secretary, who should hold their offices for one year and until others should be chosen in their places, and that the board of directors should appoint a treasurer and such other officers, agents, and servants as they might deem requisite, and should prescribe their duties. Other provisions of said articles of association were as follows:

"Article 4. The property, business and good will of the joint-stock company hereby constituted shall be vested in, controlled and managed by a board of five directors, each of whom shall be the owner and holder in his own right of at least one hundred shares therein, to be chosen by the shareholders, as is herein provided; and Danford N. Barney, Elijah P. Williams, James McKaye, Ashbel H. Barney and Thomas M. Janes shall constitute the first board of directors, and they are hereby chosen and appointed each and every of them such directors to hold their offices for and until others shall be chosen in their stead, as is herein provided. It being however hereby expressly understood and agreed that in case of a vacancy occurring in said board by death, resignation or otherwise, prior to a call for an election by the stockholders, the same may be filled by said board of directors, who may elect by ballot any stockholder eligible under the provisions herein contained.

"Article 5. Whenever any number of shareholders in said association, being the owners and holders of two-thirds in amount of the shares of said company, shall unite in a written request for an election of one or more directors and shall present the said written request for an election to the secretary, it shall be the duty of said secretary to call a meeting of the shareholders for the purposes of such election by a notice of at least sixty days, stating the time and place of said meeting. The manner of serving said notices shall be prescribed by the board of directors, who shall also appoint proper inspectors of such elections and prescribe all other needful rules and regulations appertaining thereto. Said elections shall be by ballot and each shareholder shall be entitled, either in person or by proxy, to as many votes as he owns shares in said association."

"Article 8. The directors of the joint-stock company and association hereby constituted, or a majority of them, shall and they hereby are authorized and empowered to direct, manage and control the whole property, business and affairs thereof, and to do or cause to be done and transacted all and every the matters and things specified or referred to in articles sixth and seventh of these presents, and further to do and execute all and every authority, power and thing within the general scope, intent and purpose of this association which might or could be legally done by the whole of the joint associates or copartners, if present and acting. But it is hereby expressly understood and agreed that no director herein named, or that may hereafter be elected, shall be concerned or interested in any business or thing detrimental to the interests of said company, or in opposition thereto, and especially shall no director use or employ the money, credit or name of said company otherwise than in its legitimate business and affairs."

"Said directors shall also have power and they are hereby expressly authorized, from time to time, whenever in their judgment, it may be for the best interests of said company, to change, alter and fix the number of persons that shall constitute the board of directors of said company, and in case of an increase thereof or otherwise, to fill the vacancy thereby created, in the manner hereinbefore specified; provided, however, that no such change or alteration shall be valid unless made by a vote or written consent of at least two-thirds of the whole number of existing directors."

By an amendment of the articles of association made in November, 1859, the board of directors was authorized by the unanimous vote of the shareholders to extend the term of existence of the association from time to time as they might deem for the best interest of the association. Pursuant to such amendment such term of existence has been three times extended; the last extension to expire May 1, 1924, each continuance of the company being made subject to all the provisions and agreements contained in the original articles of association, and the amendments and additions thereto. No meeting of shareholders has been held since October, 1862, at which time a board of directors was elected. The number of directors has been increased from five to seven, and the capital stock of the association from $500,000 to $10,000,000; the last increase having taken place in August, 1887.

This action was commenced May 13, 1909.

The complaint, which is very voluminous, makes many charges, all upon information and belief, against the defendants of mismanagement, waste, and fraud, and charges that the directors of the United States Express Company fraudulently conspired with the Adams Express Company and the American Express Company, and with the presidents of those companies, to the great injury of the United States Express Company, and to the great advantage of the other express companies. The relief demanded in the complaint is that the alleged conspiracy be declared unlawful, and that the parties thereto enjoined from carrying out the same; that the defendants be required to account for all moneys of the United States Express Company improperly received by them or lost through their mismanagement; that the defendants be required to call and hold a meeting for the election of directors; and that, in the event of the failure of the plaintiff to obtain a decree directing such election, a receiver be appointed and the company dissolved; and that during the pendency of the action a preliminary injunction be granted restraining the defendants from dissolving the United States Express Company, and from purchasing or permitting to be voted the shares of stock held by the Adams Express Company and the American Express Company.

The answers deny the commission by the defendants of any improper acts whatever and allege that bringing the action was the result of a conspiracy upon the part of the plaintiff and others, carried on by means of threats and false statements, to force the directors to pay to the shareholders a larger dividend than in the judgment of the directors ought to be paid, and thereby to create a false and fictitious value of the shares of stock, and enable the plaintiff and others to dispose of their holdings of shares at greatly increased prices, and to manipulate the stock market.

Upon the trial at Special Term the court in its decision found that the directors chosen at the shareholders' meeting in 1862 had long since ceased to be directors of the association, and that all vacancies occurring in the board of directors since that time by death, resignation, or otherwise have been filled by the board of directors, so that the board is now composed wholly of members elected by the board;·

that on April 18, 1901, Levi C. Weir and James C. Fargo, who were presidents respectively of the Adams Express Company and the American Express Company, competitors at many points of the United States Express Company, and who had acquired large holdings of stock of the United States Express Company, sufficient with that owned by the directors and their friends and business associates to constitute more than one-third of the whole number of shares of the company, were upon their application elected, together with defendant Stetson, directors of the United States Express Company; that their presence in the directorate had benefited the United States Express Company; that the business had greatly improved and its assets greatly increased since their election; . that the annual earnings of the United States Express Company from operations had increased from $10,300,000 in 1890 to $16,800,000 in 1909; that the assets of the company in excess of liabilities had increased from $5,500,000 in 1900 to $11,200,000 in 1909, and that in the meantime dividends had been declared of $3,400,000; that the mileage had increased from 26,500 miles to 32,500 miles; that during those years the number of offices at which the United States Express Company was competing with the Adams and American Express Companies had greatly increased; that "the presence of defendants Weir, Fargo, and Stetson upon the board of the United States Express Company had been for that company an unmixed good."

Regarding allegations of the complaint the court found:

"Many charges are made in the complaint against the directors of the United States Express Company involving mismanagement, waste, fraud, corruption, extravagance, and unfaithfulness. No proof whatever has been given to substantiate said charges.

"There has been no cessation of effort by the officers and directors to retain and increase the business done by the United States Express Company in competition with the Adams and American Companies.

"There has been and is no mismanagement and no waste on the part of the defendants or any of them in their conduct of the affairs of the United States Express Company.

"No conspiracy exists, or has ever existed, among the persons defendant, or any of them, whereby the defendant United States Express Company was to be or was defrauded in favor of its rivals, the Adams and American Companies. There has been and is no conspiracy to divert the assets of the United States Express Company to its rivals, or to any person or company whomsoever. Neither business nor contracts nor any other assets of the United States Express Company were ever diverted by the defendants, or any of them, or with their knowledge or consent, to the Adams and American Companies or to any company or person whatsoever. There is no evidence of mismanagement, waste, or fraud, on the part of the defendants, or any of them. There is no evidence that the United States Express Company has lost any assets or business through the conduct of any of the business.

"By reason of the business management and control of the business of the United States Express Company by defendants the plaintiff has not sustained any pecuniary loss or damage, but, on the contrary, as appears from the testimony, he has received and is still continuing to receive large returns, remuneration and profit from the capital that he has invested therein."

The court, among other things, found at the request of the defendants:

"There has been and is no mismanagement and no waste on the part of the defendants or any of them in their conduct of the affairs of the United States Express Company.

"No conspiracy has existed, or does exist, among the defendants, or any of them, whereby the control of the United States Express Company was to be given, or was given over, to the defendants Weir, Fargo, and Stetson, or any of them, or to the defendants American Express Company and the Adams Express Company, or either of them.

"There has been no cessation of effort by the officers and directors to retain and increase the business done by the United States Express Company in competition with the Adams and American companies.

"There has been no cessation of effort on the part of the officers and directors, or any of them, in doing all that they could to make the United States Express Company prosperous and to increase its business and earnings."

The evidence fully sustained such findings of the trial court. The court also found that the plaintiff had no adequate remedy at law.

The court held as conclusions of law that the United States Express Company was a joint-stock association, its shareholders amenable to chapter 245 of the Laws of 1854 and the statutes amendatory thereof and supplementary thereto; that the resolution by the then acting directors of the United States Express Company to elect Levi C. Weir and James C. Fargo directors was in direct violation of the intent and meaning of the articles of agreement of said association that no director should be concerned with or interested in any business in opposition to the business and interests of the United States Express Company, and that neither was eligible to be elected a director thereof; that the plaintiff was entitled to a decree of this court directing the proper officers of the United States Express Company to give due notice of and to hold a meeting of the shareholders of the United States Express Company for the purpose of electing seven directors upon the board of directors of that company; that the defendants, who were officers of the Adams and American Express Companies, were entitled to judgment against the plaintiff dismissing the complaint upon the merits; and that the plaintiff was entitled to recover costs of the action against the individuals constituting the board of directors. Exceptions were duly filed by the unsuccessful defendants, and from the judgment entered upon such decision this appeal has been taken.

[1] We apprehend it will not be contended that the plaintiff was entitled to the decree granted upon the ground of mismanagement, waste, fraud, or conspiracy upon the part of the directors, and as justifying such belief we have referred at some length to the findings upon these charges. From the opinion of the learned trial court it appears that its decision was based upon the ground that the articles of association were unwarranted under the common law, and that chapter 245 of the Laws of 1854 furnished the exclusive source of the power governing the associates in making their articles of association, and hence, that, as such articles of the associates could not confer greater powers than were given by such act, the plaintiff as matter of law was entitled to a decree directing the calling of a shareholders' meeting, and the election of a full board of directors. With this conclusion we cannot agree. The cases of Duvergier v. Felloes, 5 Bing-

ham, 565, and Blundell v. Winsor, 8 Simons, 601, cited in the opinion below, cannot be considered as of any weight in view of the later decisions. Matter of Ashton, 27 Beavan, 474, affirmed 4 De G. & J. 319; Harrison v. Heathorn et al., 6 Mann & Granger, 81, 137; Lindley on Company Law (6th Ed.) p. 183.

In Phillips v. Blatchford, 137 Mass. 510, Justice Holmes writing the opinion says, referring to partnerships with transferable shares, and citing the above English cases:

"The grounds upon which they were formerly said to be illegal in England, apart from statute, have been abandoned in modern times."

The court at Special Term has quoted at some length from the opinion in People ex rel. Platt v. Wemple, 117 N. Y. 136, 22 N. E. 1046, 6 L. R. A. 303, which related to the imposition of a tax on the corporate franchise or business of the United States Express Company, as indicating that it was not the articles of association but the statutes of the state which made it a valid and effective entity. The question there at issue was whether the company was taxable under the provisions of chapter 542 of the Laws of 1880, entitled "An act to provide for raising taxes for the use of the state upon certain corporations, joint-stock companies and associations," and the amendments to said act, and the question as to whether the organization was illegal at common law was not up for decision; but the court said, after citing the cases of Duvergier v. Felloes and Blundell v. Winsor, supra:

"It is not necessary, however, to assert in what cases such a combination of individuals would now be deemed illegal at common law, for the statutes of the state render the arrangement possible, and in our opinion the association in question is within their purview."

The court then entered into a discussion as to the effect of the articles of agreement having been executed immediately prior to the time when the act of 1854 went into effect, and alluded to the fact that the extended existence of the company began in 1864 when the law was in full force, and concluded that the company was subject to the imposition of the tax.

The United States Express Company is the creature of contract and exists by virtue of its articles of association and not by statute. As was said in Matter of Jones, 172 N. Y. 575, 65 N. E. 570, 60 L. R. A. 476:

"A joint-stock company has never appealed to the sovereignty of the state for the right to exist, but by articles of association, which take the place of the charter of a corporation, the associates have been content to do business subject to the individual liabilities of partners. * * * The principal feature of the joint-stock association is the right of perpetual succession. In this respect it is like a corporation, and enjoys all the advantages flowing from such a privilege. * * * It is competent for private individuals to create a joint-stock association, issue shares of stock, and in that form dispose of property by last will and testament. The associates by contract have created the same situation as to shares of stock that a corporation secures by charter. * * * As to the nature of the shares of stock issued by a joint-stock association, the same general principles of law are to be invoked that apply to a corporation."

"The joint-stock association is not of statutory origin, as is the corporation, but the creature of the common law." Hibbs v. Brown, 190 N. Y. 167, 192, 82 N. E. 1108, 1117.

"Even if, unlike a partnership which it really is, it can be said to exist as an artificial being, it owes its existence not to the state but to the contract of its members, and may therefore be said to exist wherever it does business or owns property. In that sense its analogy to a corporation is to one organized under the laws of two or more states." Matter of Willmer, 153 App. Div. 804, 806, 138 N. Y. Supp. 649, 651.

"The articles of association of an unincorporated joint-stock company bear the same relation to it that the charter bears to an incorporated company. They regulate the duties of the officers and the duties and obligations of the members of such a company among themselves; they specify the capital, limit the duration, and define the business of the company." Bray v. Farwell, 81 N. Y. 600, 608.

We are of the opinion that the articles of association were fully warranted under the common law; that the United States Express Company was thereby constituted a legal entity with the right of existence to such time as it might see fit to extend the same; and that the five shares held and owned by respondent are subject to the provisions of the articles of association as fully as though he were one of the original shareholders.

[2] Relative to the contention of the respondent that the provisions of the articles of association requiring the affirmative action of the shareholders owning and holding two-thirds of the stock in order to obtain the holding of a meeting for the election of directors are illegal, we are referred to no authority to that effect. Upon the other hand, this court only recently held that a provision of a certificate of incorporation of a business corporation, wholly depriving the preferred stockholders of the right to vote for directors, was valid. People ex rel. Browne v. Koenig, 133 App. Div. 756, 118 N. Y. Supp. 136.

[3] That the shareholders may devolve the sole management of the affairs of the association upon the board of directors is provided by the Joint-Stock Association Law (Consol. Laws, c. 29, § 3); but we find no provision of law prescribing the manner in which the directors shall be chosen, nor limiting the right of a voluntary association to itself prescribe the method of choosing directors, nor fixing a definite term of office; neither are we referred to any authority to the effect that it was unlawful for the associates to provide in the articles of association that, in the event of a vacancy occurring in the board of directors, the same should be filled by the remaining directors. It would seem that one shareholder would have the right, by proxy or otherwise, to empower another shareholder, although he might be a director, to cast the vote of the former at an election to fill a vacancy in the board of directors. The provision in question was apparently adopted in order to secure stability in the management of the affairs of the association, harmonious action upon the part of its board of directors, and to avoid the necessity of an election by the shareholders whenever a vacancy might occur in the board of directors. In order further to assure stability in management, a mere majority of shares was deprived of the right of choos-

ing directors, which might result in frequent changes in the policy of administration; but in order to correct abuses which might arise in the management of the affairs of the association, or dissatisfaction with the action of the board in filling vacancies, the power of displacing directors was vested in the owners and holders of two-thirds of the shares through a meeting of shareholders which should be called at their request.

It may also be observed that, under the original division of shares, this provision prevented each of the two largest shareholders, even though he might have acquired the ownership of all the remaining shares, from ousting the other from the position of associate in the management of the affairs of the company. No statutory authority was necessary to give each associate the right to say who should act for him in filling a vacant directorship. This was a right which of itself belonged to every shareholder. The fact that the right given to the board of directors to fill vacant directorships created the board a self-perpetuating body did not render illegal the article relating thereto. The Banking Law (Consol. Laws, c. 2, § 137), relating to the election of trustees of savings banks to fill vacancies, is very similar. That section provides that:

"A vacancy in the board shall be filled by the board, as soon as practicable, at a regular meeting, after the vacancy occurs."

The only violations of the articles of association found by the trial court were the election of Fargo and Weir as directors. However, the court also found that both the Adams and American Express Companies disposed of their holdings of stock, and that defendant Fargo resigned as a director, in February preceding the commencement of the action, and that defendant Weir resigned as a director in July, 1909, long before the trial of the action, and that the presence of each upon the board was an unmixed good as before stated, and that, "by reason of the business management and control of the business of the United States Express Company by the defendant, the plaintiff has not sustained any pecuniary loss or damage, but, on the contrary, as appears from the testimony, he has received and is still continuing to receive large returns, remuneration, and profit from the capital that he has invested therein."

[4] Assuming that neither Fargo nor Weir was eligible to election as a director, the action of the board of directors in that regard did not, under the established facts, warrant the granting of a decree ordering an election of a new board of directors, although it may have justified a decree declaring such elections void. But the learned trial court did not base its decision upon that ground, but rather upon the broad ground that the articles of association were unwarranted under the common law, and not justified by statute.

The Joint-Stock Association Law (Consol. Laws, c. 29, § 3) provides, and prior to the last extension of the existence of the express company provided, that the articles of association of a joint-stock association may "contain any other provision for the management of its affairs not inconsistent with law." We are of the opinion that the provisions of the articles of association, the legality of which is

questioned, were not inconsistent with law nor contrary to public policy, but were valid and effective provisions.

"The association is the creature of contract, and not of the state, and whatever the contract contains which is not of itself unlawful constitutes a part of the law of its being." Francis v. Taylor, 31 Misc. Rep. 187, 65 N. Y. Supp. 28, affirmed 52 App. Div. 631, 65 N. Y. Supp. 1133.

[5] Nor can the respondent claim to have purchased the five shares, which constitute his holdings, in ignorance of the provisions of the articles of association, and of the fact that thereby he became a party to such articles. The certificate issued to him in February, 1907, reads as follows:

"United States Express Company.

"This certifies that Benjamin F. Spraker is entitled to five shares in the United States Express Company, transferable only on the books of said company on surrender of this certificate. And it is hereby further certified that this scrip is issued and delivered to the said Benjamin F. Spraker on the express condition that such transfer may be objected to by the board of directors, in which case they shall purchase said shares for the company at market value; and that by the acceptance thereof he becomes a member of said company on the terms and conditions set forth in the original articles of association and several amendments thereto, in pursuance whereof the number of shares in said company is one hundred thousand, valued at one hundred dollars each; that each is subject to assessment, and the holder thereof liable for all losses, expenses, or other indebtedness of said company; that each and every assignee of any share therein from and after the date of the assignment becomes a member of said company on the terms and conditions of the original holder; and that the term thereof is 20 years from the first day of May, 1904."

From the record it appears that shareholders representing only a minority of the shares signed requests that a meeting be called for the purpose of electing a board of directors, and that none of these requests was ever presented or offered to be submitted to the company or to its secretary.

[6] The articles of association are clear, devoid of ambiguity, and require no construction by the court, and are to be read in the light of the conditions which existed at the time they were made. So far as appears they were entered into understandingly by all the five associates, and it is not for the court to now make a new contract for them.

The judgment appealed from must be reversed, and the complaint dismissed upon the merits. All concur, except KELLOGG, J., dissenting in opinion.

JOHN M. KELLOGG, J. (dissenting). Five men signed and filed articles of association, forming the United States Express Company, as a joint-stock corporation, April 24, 1854, having capital stock of $500,000, divided into shares of $100 each. The subscribers took all the stock. The association was to continue for ten years from May 1st following, unless sooner dissolved by law or by the directors. It was provided by the articles that the entire management of the business was vested in the directors, and that the association should continue notwithstanding the death or the transfer of the stock of any of

the stockholders; that no shareholder, other than one directly authorized by the board of directors, could use or sign the name of the company under any circumstances or pretext whatsoever; and that the directors might increase or diminish the number of directors, might increase the capital stock, might levy assessments upon the stockholders to meet liabilities; and, by an amendment of the articles, the directors might from time to time extend the lifetime of the association. The stockholders thus became liable for the debts incurred by the association in the same manner as if they were partners, but they had surrendered all control of the business and of the money they had invested therein to the directors. Without power to act, the stockholders yet were interested: (1) In the profits which might be paid to them from time to time by action of the board of directors; (2) in a distribution of the assets, if the directors should choose to liquidate the business; (3) in the enhancement and depreciation in value of the stock by the conduct of the business by the directors; and (4) in escaping personal liability on account of the acts of the directors. They were therefore vitally interested in the personnel of the directors who should control their business and determine the time for which such control should continue. The association, in fact, was a copartnership, with many of the characteristics of a corporation. In so far as the relations of a stockholder to the association itself are concerned, aside from the liability for debts, it is difficult to draw any substantial distinction between an association and a stock corporation.

The only question, however, of interest here, is whether a majority of the stockholders may elect the directors, or whether the directors may for all time designate their successors.

The articles of association were evidently intended to conform to chapter 245 of the Laws of 1854 passed April 15th. That statute provided that, where the property of a joint-stock association is represented by shares of stock, it may be lawful to provide in the articles that the death of a stockholder or the assignment of his stock shall not work a dissolution of the association, and that the association shall not be dissolved except by judgment of a court for fraud in its management, or for other good cause to such court shown, or in pursuance of its articles of association, and "that the shareholders may devolve upon three or more of the partners the sole management of their business." The agreement provides at article 4 that the property, business, and good will of the company "shall be vested in, controlled and managed by a board of five directors, each of whom shall be the owners and holders in his own right of at least one hundred shares therein, to be chosen by the shareholders, as is herein provided. And Danford N. Barney, Elijah P. Williams, James McKaye, Ashbel H. Barney and Thomas M. Janes shall constitute the first board of directors and they are hereby chosen and appointed, each and every of them, such directors, to hold their offices for and until others shall be chosen in their stead, as herein provided. It being, however, expressly understood and agreed that in case of a vacancy occurring in said board by death, resignation or otherwise, prior to a call for an election by the stockholders, the same may be filled by said board of directors, who

may elect by ballot any stockholder eligible under the provision herein contained."

Article 5 provides that, when two-thirds in amount of the shareholders unite in a written request for an election of one or more directors, the secretary shall call a meeting of stockholders for that purpose, by 60 days' notice, stating the time and place of the meeting.

Article 8 authorizes the board of directors to change, alter, and fix the number of directors, and in case of an increase thereof, or otherwise, to fill the vacancy thereby created in the manner thereinbefore specified.

In the year 1862 there was an election of directors; no other election by stockholders has ever been held. The original directors selected by the articles have passed from the association, and none of the directors elected in 1862 is now in service. None of the present directors was chosen by the stockholders, but all were appointed from time to time by the board of directors.

The articles provide that the five original directors shall serve until their successors are chosen in their stead. This does not necessarily mean that they are to continue directors indefinitely, unless they are recalled by a two-thirds vote of the stockholders, at a special meeting called for that purpose, but is consistent with the idea that some other provision will define their term of office and in what manner the stockholders shall perform their duty and exercise their right of electing directors; but we find no such provision, in express terms written, which was omitted either by design or by oversight. It may not have been a very material provision at the time in the minds of the associates, inasmuch as they owned the entire stock and all were upon the board. Perhaps they were satisfied that the four had the power to remove the other director, if they thought he should be removed. We must assume, however, that the articles intended to comply with the provisions of the law which contemplated that directors should be chosen by the stockholders. That was either their intention, or else the articles were written by a shrewd lawyer, who by using the language of the statute showed an intent to comply with the law, and then, by subsequent provisions, attempted to annul the effect of such compliance by, in effect, providing that the majority of the stockholders should never elect a director, if the board of directors chose to exercise that right themselves.

We cannot assume that the articles were intended as a joke or to overreach the public with whom the stock might be marketed. We must consider that they were fairly made and fairly intended to carry out the provision of law, and that it was within the contemplation of all the parties that a director who was to serve for a term must be selected by the stockholders, and that the provision for filling a vacancy was intended only to authorize the board to appoint some one to act as director until an election by the stockholders could be conveniently had. The right to fill a vacancy is limited to a vacancy occurring prior to a call for an election by the stockholders. If a call had been made for an election, a vacancy was not to be filled; but, if it occurred when no election was in immediate prospect, then it should be filled. The question of interest is: For how long a time

should the vacancy be filled? Evidently until there was a regular meeting for the election of directors, or until the board of directors found it convenient to call one, within a reasonable time. I do not think the provision means that no election of directors and no meeting of the stockholders for any purpose are to take place until two-thirds of the stockholders petition for such meeting. The directors were the sole agents and managers for the stockholders, and it is evident that it was contemplated that there should be regular meetings of the stockholders, or that the directors should from time to time call meetings, to submit the acts of the board to their consideration and for such directions with reference to the business as the owners might choose to give and for any business that might properly come before them. This meeting to be called by two-thirds of the stockholders was evidently intended as a special meeting for the recall of a director or for an election which in the opinion of the stockholders was necessary, in the absence of a regular meeting in the near future and on account of the neglect of the directors to call such meeting. Clearly, the directors who had the sole control of the business had power to provide for regular meetings of the stockholders and for such other meetings from time to time as the requirements of the business made necessary and desirable. The directors, by failing to provide for regular meetings and by omitting their duty to call a meeting for the election of directors, could not thereby deprive the stockholders of their right to elect and exercise that right themselves.

If the appellant is right in his contention, it follows that a board of directors who own one-third of the stock and one share more can keep the company alive perpetually, and they and the persons whom they elect and to whom they transfer their stock can absolutely control against the wishes of the other two-thirds. If the articles of association had provided that the directors should be appointed from time to time by the board of directors and that that right should remain so long as the directors were able to control one-third of the stock and one share in addition, it would clearly be in violation of the provision that the directors are to be chosen by the stockholders.

Undoubtedly the right to form a joint-stock association is a common-law right, but that right has from time to time been modified by statute, and perhaps the statutes have given to such an association a control over the property and rights of the stockholder which otherwise might not be permissible. The provision giving the stockholders the right to devolve upon three or more of the partners the sole management of the business in my judgment means that, unless the stockholders themselves are directly carrying on the business, it shall be carried on by a board of directors selected by them. It is not optional with the associates to disregard the statute and make other provisions in the articles which take from the associates the right to participate in the control of the business.

This statutory provision is a limitation upon the right of the stockholder to participate in his own business, and is also a limitation upon the association which prevents the election of directors except by the stockholders. Aside from this statutory provision, if it were possible

to provide in such articles that the time of the duration of the association should rest entirely at the will of the directors and that the directors, so long as they controlled one-third and one share in addition of the stock, should elect the directors perpetually notwithstanding the wishes of the majority, the provision is so unusual, so much in conflict with the rights of property of the stockholder and with the rights of stockholders in corporations (which relation, perhaps, furnishes the closest resemblance to a stockholder in such an association), that it would require expression in language which admitted of no other reasonable construction.

We are not discussing the right of the five original stockholders to agree among themselves as to the particular manner in which they should carry on their business. We stand 62 years after that event, when the affairs of the company are controlled by persons then unknown, and probably to a great extent not then in existence.

The affairs of the association have changed materially since its inception. It now has $10,000,000 of capital, seven directors, and an extensive business, evidently many times beyond the contemplation of the original stockholders. Instead of being a small association, controlled by the five men owning it, it has assumed great magnitude in its capitalization, business, and the territory which it serves. Its stock has been placed upon the Stock Exchange for sale in the same manner and substantially upon the same conditions as the stock of a corporation. The public dealing in this stock undoubtedly is dealing in it on the assumption that it is in its nature substantially that of a corporation. They evidently do not purchase it with the understanding that it is practically disfranchised; that in fact it has no real voting power. The voting power of a stock is an element of value, and the small block of stock controlled by the directors is of a greater value than that of their associates who form the great majority of the stockholders, if such minority carries with it the control of the association, and thereby its offices and salaries.

Our government and institutions rest upon the expressed will of the majority, and the statutory provision referred to recognizes the fact that this association should be controlled by the majority of its stockholders. After the articles adopted the provision of the statute that the stockholders should elect the directors, if there is language qualifying that declaration, it should be treated as surplusage and disregarded. In my judgment, the articles were intended to be in conformity with the statutory provision, and the associates inadvertently omitted to state the actual term of the directors and when and how the stockholders should elect them. This was not a serious oversight, for the board of directors have the absolute control, under the law, of the affairs of the association, and have ample power at any time to call the stockholders together for the election of directors, or the consideration of any business affecting the association. The articles of association make it the duty of the board to prescribe such general rules for the government of their own proceedings as they deem for the best interests. The government of their proceedings is the government of the proceedings of the association. It was within

their power and it was their duty to call meetings of the stockholders from time to time for the election of directors, with the right to themselves, if they deemed it important, to fill a vacancy; but such appointment would continue only until the election of a director within a reasonable time. The directors have not performed the duty of calling a meeting for an election of directors within a reasonable time after vacancies have occurred.

We do not decide, because the question is not before us, for how long a time a director is elected. We simply decide that it is the duty of the directors to call a meeting of the stockholders forthwith for the election of an entire board of directors.

We have not overlooked the fact that the statute of 1854 under which the association was organized was repealed by chapter 235 of the Laws of 1894, being superseded by the revision that year of the law upon that subject. In place of the provision cited we find that the articles may "(2) prescribe the number of its directors, not less than three, to have the sole management of its affairs, (3) contain any other provision for the management of its affairs not inconsistent with law." The Consolidated Laws substantially preserve this revision. I do not think this change in the statute affects the construction of the articles of association.

The fact that the stockholders owned the association; that it would be unreasonable to commit their affairs to the control of a minority interest; that our government and institutions rest upon the express will of the majority; and that the power of a minority of the stockholders to perpetuate the association and their control in it, excluding the majority—is so antagonistic to the rights of property and so in violation of the practice among corporations and other associations of individuals that we may fairly assume that, if the provisions we are considering in this article have the meaning claimed for them by the appellant, they would be inconsistent with law.

The order appealed from is therefore affirmed, with costs.