ROBERTS v. ANDERSON, Internal Revenue Collector.

(Circuit Court of Appeals, Second Circuit. July 21, 1915.)

No. 290.

1. JOINT-STOCK COMPANIES &1—EXISTENCE AT COMMON LAW.
    At common law, and without any statutory authority, persons may associate themselves in joint-stock companies, with transferable shares.
    [Ed. Note.—For other cases, see Joint-Stock Companies, Cent. Dig. § 1; Dec. Dig. &1.]

2. JOINT-STOCK COMPANIES &14—PRESIDENT AS TRUSTEE—AUTHORITY AT COMMON LAW.
    The president of an unincorporated joint-stock association does not need statutory authorization to enable him to hold its real estate in trust for himself and other members.
    [Ed. Note.—For other cases, see Joint-Stock Companies, Cent. Dig. § 15; Dec. Dig. &14.]

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. JOINT-STOCK COMPANIES ⬩⟜19—SUITS BY OR AGAINST—PARTIES—COMMON-LAW RULE.

At common law, in the absence of statute, an unincorporated joint-stock association cannot sue or be sued in the name of the association or its officers, but only in the names of the members composing it, however numerous.

[Ed. Note.—For other cases, see Joint-Stock Companies, Cent. Dig. §§ 21–27; Dec. Dig. ⬩⟜19.]

4. INTERNAL REVENUE ⬩⟜9—JOINT-STOCK COMPANY—FEDERAL CORPORATION TAX—"CORPORATION."

Under the New York Joint-Stock Association Law (Consol. Laws, c. 29), authorizing joint-stock companies to sue and be sued in the name of the president or treasurer, and providing that suits against a joint-stock company shall be prosecuted in the first instance against the president or treasurer, and under Const. N. Y. art. 8, § 3, providing that the term "corporation" shall be construed to include all associations and joint-stock companies having any of the powers or privileges of corporations not possessed by individuals or partnerships, and that all corporations shall have the right to sue, and shall be subject to be sued, in all cases as natural persons, an unincorporated joint-stock company, operating an express business, its shares being transferable, and its property being vested in trust for the association in five directors, enjoyed such privileges under the statutes of New York as to be taxable as a joint-stock association existing under the law of the state, under Corporation Tax Law Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (Comp. St. 1913, § 6300), as amended, providing that every corporation, joint-stock company, or association organized for profit and having a capital stock represented by shares, now or hereafter organized under the laws of any state, shall be subject to a special excise tax, since under the statutes of the state the association was endowed with capacities and attributes not possessed by a partnership at common law; it being practically a "corporation" by New York law, despite the absence of the important corporate attribute of limited liability. ♦

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⬩⟜9.

For other definitions, see Words and Phrases, First and Second Series, Corporation.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here on writ of error to review a judgment of the United States District Court for the Southern District of New York dismissing the complaint, which judgment was filed on March 8, 1915.

Branch P. Kerfoot, of New York City, for plaintiff in error.

H. Snowden Marshall, Gordon Auchincloss, Sp. Asst. U. S. Atty., and Ben A. Matthews, Asst. U. S. Atty., all of New York City, for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This action arises under section 38 of the act of Congress approved August 5, 1909, known as the Corporation Tax Law, and acts amendatory thereof and supplemental thereto. The action is brought to recover corporation excise taxes paid by the defendant for the years 1909 and 1910. The issue presented to the court is whether the United States Express Company was or was not

subject to the tax imposed. The amount of the tax paid for the year 1909 was $5,613.12, and for the year 1910 was $8,354.45. The plaintiff, therefore, asks for judgment for $13,967.57 and interest from the date of the respective payments. These payments, it is averred, were not paid voluntarily, but under duress and protest.

Section 38 of the act (Comp. St. 1913, § 6300) provides as follows:

"That every corporation, joint stock company or association, organized for profit and having a capital stock represented by shares, * * * now or hereafter organized under the laws of the United States or of any state or territory of the United States, * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, * * * equivalent to one per centum upon the entire net income over and above $5,000 received by it from all sources during such year. * * *"

No claim is made that the United States Express Company was organized under any law of the United States. That the company is organized for profit and has a capital stock represented by shares is not denied. The company avers that it is an unincorporated association or partnership, formed by agreement in New York City on April 22, 1854, and that ever since it has existed solely by virtue of that agreement and extensions thereof. It denies that it is organized or has ever existed under any law of the United States, or of the state of New York, or of any other state or territory. It avers that all its operations and activities have been carried on without a franchise or other rights than such as are allowed to individuals or to partnerships under the law of the land. Its agreement, it declares, has never depended upon any statute for its effectiveness. It denies that it has ever been contemplated that its association should derive a statutory privilege of doing business in a capacity other than that of a partnership or of individuals voluntarily associated for the purpose of carrying on the business provided for in the partnership agreement.

It appears that the company is conducting its business in 28 states, in the District of Columbia, and in the province of Ontario, and that it has some 4,500 offices. Under the original agreement of 1854 the company was to continue in existence for a term of 10 years unless sooner dissolved by law or by a vote of the directors. But in 1859 the term was extended for the further term of 20 years from May 1, 1864. In 1884 it was extended 20 years from May 1, 1884, and in 1903 it was extended 20 years from May 1, 1904. The articles of association state that the parties have agreed, and—

"do hereby severally and mutually covenant and agree, to form a joint-stock company, with the intent and purpose of doing and prosecuting a general express forwarding agency, commission, banking, exchange and insurance business at and between the city of New York, and such other cities and towns in the United States, the Canadas, or other foreign countries, as the directors, hereinafter named, or their successors, may, from time to time, direct."

The property and management of the company is vested in a board of five directors. The board are given authority "to change, alter and fix" the number of persons that shall constitute the board, and in case of an increase thereof or otherwise to fill the vacancy thereby created. They also have the right by a unanimous vote to extend the term of the existence of the company. They are authorized at any time by

a unanimous resolution to dissolve the company if deemed for its best interests. They are empowered to declare dividends out of net earnings, and are authorized in their discretion—

"to purchase, buy, sell or exchange any line or lines of express already established as well as to establish new lines and to run said lines and carry on the business thereof, so purchased or established under separate and distinct firm names or otherwise in the discretion of said board."

They are authorized to assess the shares—

"for any losses, damages or expenses to which the company may be subjected in the prosecution of its legitimate business."

In the case of the refusal or neglect of any shareholder to pay and discharge any assessment whenever the same is called for by the board, the whole or so many of his shares as is necessary may be forfeited and sold. The shares have a face value of $100, and the number of shares may be increased or decreased as the board of directors think best. There are at the present time 100,000 shares, owned by more than 1,500 members. The shares are assignable. It is provided that death or the incapacity of any member shall not operate as a dissolution of the company, but the survivors shall prosecute the business in the same manner as if no such death or incapacity had occurred. But in case of death the survivors have the right—

"to purchase and take the interest and shares of said deceased shareholder by paying to his legal representatives the actual value thereof at the time of his decease, to be determined by three distinterested persons to be mutually chosen by the parties interested, unless the heirs of such deceased shareholder shall be of age and legally competent to act and shall elect to retain and hold such share or shares in conformity with these articles."

And it is provided that no shareholder in the company other than such person or persons as may be authorized by the board—

"shall have the right or authority to use or sign the associate name of the company, or the name of any firm belonging thereto, under any circumstances or pretext whatever."

The articles provide that:

"All deeds of real estate and all bonds and mortgages or other sealed instruments, made to and for the benefit of said company, shall be made and executed to and by the president thereof and his successors, and all suits at law or in equity brought or prosecuted for said company shall be in the name of the president thereof."

In Eliot v. Freeman, 220 U. S. 178, 31 Sup. Ct. 360, 55 L. Ed. 424 (1911) the Supreme Court held that the intention of Congress was to embrace within the corporation tax statute only such corporations and joint-stock associations as were organized under some statute, *or derived from that source some quality or benefit at the common law.*

[1] It may be conceded that at common law and without statutory authority persons may associate themselves together in a joint stock company with transferable shares. In Lindley on Company Law (6th Ed.) p. 193, it is said:

"Upon the whole, therefore, it appears that there is no case deciding that a joint-stock company with transferable shares, and not incorporated by charter or act of Parliament, is illegal at common law; that opinions have nevertheless differed upon this question; that the tendency of the courts was

formerly to declare such companies illegal; that this tendency exists no longer; and that an unincorporated company with transferable shares will not be held illegal at common law, unless it can be shown to be of a dangerous and mischievous character tending to the grievance of her majesty's subjects. The legality at common law of such companies may therefore be considered as finally established."

And that such is regarded as the law by the Supreme Court of the United States is seen in Eliot v. Freeman, supra, where joint-stock companies having transferable shares were recognized as not having derived any of their rights from the statutes. See, too, Warner v. Beers, 23 Wend. (N. Y.) 103, 147 (1840) where it is said that by the common law shares may be made transferable absolutely, and that the right to transfer shares may by agreement be incorporated into partnership articles.

[2] It may be conceded that it is not necessary that an unincorporated association should have statutory authorization to have its real estate held by its president as a trustee for the members. Indeed, in Eliot v. Freeman, supra, the property of an unincorporated association was held by trustees, and it was admitted by the court that its right was not derived from any statute.

[3] But it appears that the United States Express Company is in the enjoyment of certain rights or privileges which no unincorporated association enjoys at common law. In other words, that company derives from a statutory source a "quality or benefit not existing at common law." In the case of an unincorporated association the rule at common law is that it cannot sue or be sued in the name of the association or of its officers, but must sue in the name of all of the members composing it, however numerous they may be. See 22 Cyc. p. 477. The hardship and great inconvenience of making all the members of large unincorporated companies parties to actions have led to important remedial legislation in this country and in England. This legislation in substance provides that such associations may sue and be sued in the name of a designated officer, as the president or treasurer of the company, who for the purposes of suit is substantially a corporation sole and the representative of the company, as distinct from the individuals composing it.

In 17 American & English Encyc. of Law (2d Ed.) p. 643, reference is made to the fact that modern legislation usually provides, in the case of unincorporated companies, that they may sue and be sued in the name of an officer who is the representative of the company, and it adds:

"But such officer must be created or pointed out by law, since the partners or associates cannot by their own act empower one of their officers for the time being to represent the firm and sue and be sued on its behalf. Such a person would not be a representative, like a corporation sole, and could have no such standing as such in court."

We have no doubt that this is a correct statement of the law, and that the members of an unincorporated joint-stock company or association cannot, in the absence of a statute so providing, designate one of their officers to sue and be sued as the representative of the others. The question was so decided in Hybart v. Parker, 4 C. B. (N. S.) 209

(1858), where the three judges were unanimous. In his opinon Wiliams, J., said:

"It may be, as Mr. Collier suggests, that the law operates hardly in the case of these companies; but, if it be a hardship, the remedy must be sought at the hands of the Legislature."

Willes, J., said:

"I agree with the rest of the court in thinking that this declaration cannot be supported, and for this additional reason: That, if we were to hold that the purser might maintain this action, it would be trenching upon the prerogative of the crown, by making a new species of corporation—a corporation sole for the purpose of bringing actions."

And the courts in New York recognize the same doctrine. In Van Aernam v. Bleistein, 102 N. Y. 355, 7 N. E. 537 (1896), Judge Rapallo points out that in the state of New York, prior to 1849, all the members, of an unincorporated joint-stock company or association were necessary parties to an action by or against such company or association, whatever the number of its members might be. He says that:

"Such an association could not sue in the name of any officer of the association or in the name of its trustees."

He adds that Laws 1849, c. 258, § 1, provided that any joint-stock company or association, consisting of seven or more shareholders or associates, might sue or be sued in the name of the president or treasurer, for the time being, of such joint-stock company or association, and that suits so prosecuted should have the same effect on the joint rights or property of the company as if prosecuted in the names of all the shareholders or associates. And in an earlier case, Westcott v. Fargo, 61 N. Y. 542, 548, 19 Am. Rep. 300 (1875), the same doctrine was announced; the court saying:

"Such an officer must be created by law, since the partners or associates cannot, by their own act, empower their treasurer or secretary, for the time being, to represent the firm and sue and be sued on its behalf. Such a person would not be a representative, like a corporation sole, and could have no standing as such in court."

[4] The statutes of the state of New York have endowed the United States Express Company with capacities and attributes not possessed by a partnership at common law. They have legalized attributes assumed by the United States Express Company and made valid and effective its asserted rights. The New York act of 1849, authorizing joint-stock companies to sue and be sued in the name of the president or treasurer, was followed by chapter 153 of the Laws of 1853, amending the former act so as to provide that suits against a joint-stock company should in the first instance be prosecuted against the president or treasurer of the company, and that suits could not be brought against individual shareholders until judgment against the company was returned unsatisfied. These provisions seem to be still in force, being incorporated in the Joint Stock Association Law (Consol. Laws, c. 29). Moreover the Constitution of New York, in article 8, § 3, provides as follows:

"The term 'corporations' as used in this article shall be construed to include all associations and joint-stock companies having any of the powers or

privileges of corporations not possessed by individuals or partnerships. And all corporations shall have the right to sue and shall be subject to be sued in all * * * cases as natural persons."

It would seem that under the Constitution and laws of New York the United States Express Company is for all practical purposes a corporation. The fact that its members do not possess the important corporate attribute of limited liability is not material to the purposes of this suit. Corporations even exist under charter or statutory provisions where the members do not enjoy a restricted liability.

In People ex rel. Platt v. Wemple, 117 N. Y. 136, 22 N. E. 1046, 6 L. R. A. 303 (1889), the New York Court of Appeals had before it the validity of a tax imposed upon the United States Express Company under a statute of the state of New York (chapter 542 of the Laws of 1880) entitled "An act to provide for raising taxes for the use of the state upon certain corporations," as amended by subsequent acts (chapter 361, Laws of 1881; chapter 501, Laws of 1885). The statute declared that:

"Every corporation, joint-stock company or association whatever, now or hereinafter incorporated or organized under any law of this state, or now or hereafter incorporated or organized by or under the laws of any other state or country and doing business in this state," should be subject to the tax.

The court held that the United States Express Company was liable to the tax. The court said:

"In view of the capacities and attributes with which, as we have seen, the United States Express Company is endowed, and in view, also, of the statutes which legalize its assumed capacities and make valid and effective its asserted right of succession, its distinctive name and the alienability of its shares, we find nothing to warrant the contention of the appellant that it is a mere partnership, existing only under its articles of agreement and association. It is true those articles contain no reference to any statute of the state, as one under or by which the company was organized, yet, by the very constitution of the body itself and the privileges and powers which it can only exercise by virtue of those statutes, it must be taken to belong to one of those classes of artificial beings described in the act of 1880, supra, as 'a corporation, joint-stock company or association.' "

And the court further said:

"The word 'incorporated,' as here used, is not to be taken in a technical or restricted meaning and confined to an association brought into being according to the formula of a statute, but as including any combination of individuals upon terms which embody or adopt as rules or regulations of business the enabling provisions of the statutes. In the case before us the agreement, which brought many persons into one artificial body, was so framed as to accomplish that end, and in proposing to conduct its affairs by the power given to it in the mode prescribed by the Legislature, they must be deemed, for the purposes of the act in question, to be incorporated—that is, formed or united—under the law of the state, whether the artificial body be termed a corporation, a joint-stock company, or association."

It also declared:

"It is precisely such an association as, when formed without authority from Parliament, was declared in England to be illegal and void, and to be 'deemed a public nuisance' (6 Geo. I, c. 18, § 18); the statute in this respect following, it was said, the common law and enforcing its rules by the imposition of penalties."

In Spraker v. Platt, 158 App. Div. 377, 386, 143 N. Y. Supp. 440 (1913), the Appellate Division of the Supreme Court of New York, Third Department, it is declared that the United States Express Company is the creature of contract and exists by virtue of its articles of association and not by statute, and that joint-stock associations are not of statutory origin, but the creature of common law. We admit that this company did not organize under a statute, and that the common law permits the organization of joint-stock companies. We do not however understand that the court in that case meant to decide that the company derived no advantage from any statute of the state and possessed no rights under its articles, except such as the common law gave it. And it could not have so decided without overruling the Court of Appeals of the state.

The conclusion we have reached is that, while the United States Express Company is without a special charter and has not been organized under any statute, but is a joint-stock company created under articles of association or agreement, it nevertheless is in the enjoyment of valuable privileges which such a company did not possess at common law, but obtains by virtue of the statutes of New York. In Cook on Corporations (7th Ed.) vol. 2, § 505, that writer says:

"There is an essential difference between a joint-stock company as it exists at common law and a joint-stock company having extensive statutory powers conferred upon it by the state within which it is organized. The latter kind of joint-stock companies are found in England and in the state of New York. To such an extent have these statutory powers been conferred on joint-stock companies that the only substantial difference between them and corporations is that the members are not exempt from liability as partners for the debts of the company."

We think this language fitly describes the status of the United States Express Company, and that the company belongs to that class of joint-stock companies which it was the intention of Congress to tax under the Corporation Tax Act of 1909. Moreover the company has regarded itself as organized under the laws of New York. In Chapman v. Barney, 129 U. S. 677, 679, 9 Sup. Ct. 426, 428 (32 L. Ed. 800) (1889) it described itself as "a joint-stock company organized under and by virtue of a law of the state of New York, and which said company is authorized by the laws of the state of New York to maintain and bring suits, in the name of its president, for or on account of any right of action accruing to said company." See Platt v. Colvin, 50 Ohio St. 703, 36 N. E. 735.

Judgment affirmed.