## BURK-WAGGONER OIL ASS'N v. HOPKINS, Collector of Internal Revenue.

(District Court, N. D. Texas, Dallas Division. March 3, 1924.)

No. 3301.

**1. Internal revenue ⬤�﹆7—Joint-stock company not "partnership" within Income. Tax Act.**

A joint-stock company in the state of Texas, although held a "partnership" by the courts of that state, is not a partnership within the meaning of Revenue Act 1918, § 218 (Comp. St. Ann. Supp. 1919, § 6336⅛i), providing that individuals carrying on business in partnership shall be liable for income tax only in their individual capacity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Partnership.]

**2. Statutes ⬤⟹219—Executive construction persuasive.**

The courts give great weight to a construction placed upon an act of Congress by the Executive Department which is charged with the duty of carrying it into effect, not a controlling weight, but persuasive.

**3. Internal revenue ⬤⟹1—Congress alone has power to legislate and to tax which it cannot delegate.**

While regulations made in pursuance of statutory authority have the force and effect of law, Congress alone has the power to legislate (Const. art. 1, § 1), and it alone has the power to lay taxes (article 1, § 8), and it may not delegate this power.

**4. Constitutional law ⬤⟹77—Commissioner of Internal Revenue in making regulation held not legislating.**

When the Commissioner of Internal Revenue, promulgating article 1501 with reference to the Revenue Act of 1918, classified persons, partnerships, and corporations for the purpose of the income tax, he was explaining his understanding of the statute and was not legislating.

**5. Statutes ⬤⟹220—Passage of similar law with exact wording indicated satisfaction with executive definition.**

That Congress, after construction of a statute by the Executive Department, passed a similar law with the exact wording, indicates that it was satisfied with the construction and definition that the Executive Department had placed on its act.

**6. Internal revenue ⬤⟹2—Graduated income tax constitutional.**

Under the Sixteenth Amendment to the federal Constitution, a graduated income tax is constitutional, notwithstanding article 1, § 2, cl. 3, and article 1, § 9, cl. 4, of the federal Constitution.

**7. Constitutional law ⬤⟹42—Person must show injury to question constitutionality of statute.**

A person, in order to question the constitutionality of a statute, must show that the alleged unconstitutional feature injures him, and, in fact, deprives him of rights secured to him by the Constitution.

**8. Constitutional law ⬤⟹42—Stockholders of joint-stock company suing held not entitled to complain of unconstitutionality of statute.**

Stockholders of a joint-stock company suing collector of internal revenue for return of taxes on ground that the Revenue Act of 1918 is unconstitutional, in that members should only be taxed as partners, are not bound by any determination because not parties to the litigation, and hence such constitutional question cannot be considered.

**9. Constitutional law ⬤⟹48—Statute not to be interpreted unconstitutional if it can be avoided.**

A statute is not to be interpreted as unconstitutional if such interpretation can be reasonably avoided. ·

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. Constitutional law ⟨key⟩48—Statute presumed constitutional.**

A statute is presumed to be constitutional.

**11. Internal revenue ⟨key⟩2—Income Tax Act not unconstitutional as regards joint-stock companies.**

Revenue Act of 1918 is not invalid because joint-stock companies are taxed on income as corporations and not as partnerships, because it applies equally to all such companies similarly situated, and is therefore uniform, under Const. art. 1, § 2, cl. 3, and article 1, § 9, cl. 4.

At Law. Action by the Burk-Waggoner Oil Association against George C. Hopkins, Collector of Internal Revenue, for the recovery of $145,827.67, with interest. Judgment for defendant.

Weeks, Morrow & Francis, of Wichita Falls, Tex., Kixmiller & Baar, of Chicago, Ill., Harry C. Weeks, of Wichita Falls, Tex., and J. M. Sternhagen, of Chicago, Ill., for plaintiff.

Henry Zweifel, U. S. Atty., and N. A. Dodge, Asst. U. S. Atty., both of Fort Worth, Tex., and Nelson T. Harston, Sol. of Internal Revenue, and Arthur H. Deibert, Sp. Atty., Department of Internal Revenue, both of Washington, D. C., for defendant.

ATWELL, District Judge. The plaintiff alleges that it is an unincorporated association or partnership; that its members contributed $60,000 as a capital to be used in the business of producing oil in the oil fields of Wichita county, Tex.; that in the year 1919 it received a profit on such investment of $1,838,053.90; that the bureau of internal revenue of the United States had adopted certain rules and regulations which required the plaintiff to pay $561,279,20, income tax on said net profit; that such payment was made in four installments, the first three being paid to the predecessors of the defendant against whom suit likewise pends, and the latter, of $145,827.67, having been paid to the defendant; that all of such payments were made under protest and to avoid penalties and seizure.

Plaintiff contends that the enterprise was a partnership and that its members are subject to tax under the Revenue Act of 1918 (40 Stat. 1057), if at all, under the terms and provisions relating to partnerships, and individuals, and not under the terms and provisions relating to corporations, and that no sum whatever was due by said enterprise as taxes, but that any and all profits received from such operations were the income of the various members of said enterprise in an amount proportionate to their interest, and that no income tax should have been assessed against, or collected from, the plaintiff.

That the collection of such tax from the plaintiff was unconstitutional and contrary to the provisions of article 1, §§ 1, 2, 8, and 9 of the Constitution of the United States, and also to the provisions of the Sixteenth Amendment thereto, in that the same is not based upon income and is not in proportion to population; that in so far as it purports to be based upon official regulations it is unconstitutional, in that such regulations are beyond the power of the Secretary of the Treasury to promulgate, and beyond the power of the Congress to authorize; that the individual members of the plaintiff have been subjected to unlawful and unconstitutional taxation because such tax is not authorized

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by the Revenue Act of 1918; that if it be held that such taxation is authorized by said act, then said act is unconstitutional and contrary to the Fifth and Sixth Amendments to the Constitution; that the taxes referred to have been imposed upon the individual members of the plaintiff irrespective of their claims and irrespective of the rates of tax set forth in the act of 1918.

The defendant replied by general demurrer and general denial.

A jury was waived, and from an agreed statement of facts it was shown:

(a) That a written agreement, set out in full in the stipulation, was executed on the 15th day of November, 1918, by R. M. Waggoner, Clois L. Green, Lee Crenshaw, D. H. Melton, W. H. Anchor, and A. H. Murchison, which was filed for record in the deed records of Wichita county, Tex., on the 27th day of the next month.

Article 1 of such agreement provides for the formation of an "unincorporated joint-stock association," to be known as "Burk-Waggoner Oil Association," to continue in existence during the lives of the six individuals and for 21 years after the death of the one who last dies, unless sooner dissolved. The general purpose of the company was the purchase or lease of lands containing oil, to extract the same, and to do all other things necessary or proper, incident to the mining, manufacture, sale, or transportation of oil and its products. That the capital stock should be $60,000 divided into 600 shares of $100 each to be evidenced by certificates. That such certificates should be signed by the board of trustees and countersigned by the secretary; such certificates refer to the plaintiff as a joint-stock association, and are transferrable only on the books of the company. That no member of the company, or owner, or holder of the certificates shall have any authority, power, or right to transact any business whatever for, or on behalf of, or binding on the company, or any member thereof, and that no member of the company shall be personally liable for any debts, demands, contracts of any kind, or torts of the company, beyond the payment in full of the price for which the share or shares were sold individually by the company. That shareholders should have no right of partition, nor of dissolution of the trust, but that the shares should be personal property carrying the right of division of profits, and at the termination of the trust to a division of the principal and profits in proportion to the number of shares held. Death, insolvency, or bankruptcy of any member, or a transfer of his interest should not work a dissolution, nor should it entitle any one to an action or proceeding in law or equity against the members, trustees, officers, or property. The affairs of the company were to be managed by a board of six stockholding trustees, whose successors should be elected annually by a majority of the shares present or represented at a meeting; each board to elect its own president and other officers and prescribe their duties. Title to all property was to be held in the name of the trustees, who would hold it as joint tenants and not as tenants in common. Such trustees, in their capacity as such might sue or be sued in any court of law or equity, or the company might sue or be sued in the company name, as provided by the statutes of Texas. Trustees had full power and authority to conduct the affairs

of the business. In case of a vacancy on the board, the remaining members might fill the same, subject to the right of the shareholders to do so, should they see proper to exercise the right. The board would select managers and employees as they were necessary, fixing their compensation and defining their duties; the board to declare and pay dividends as they might deem expedient. That such board should have no power to bind the shareholders or members personally. That in every written contract entered into by the trustees they should refer to the declaration of trust, and that any one contracting with them should look only to the funds and property of the company for the payment of any debt or judgment. Neither the trustees nor the shareholders should be personally liable for any debt. The board would adopt such by-laws as it thought proper. Any annual special meeting of the shareholders might amend the articles of association by a vote of three-fourths of the shares present and that by-laws might be adopted, repealed, or amended in any respect, not inconsistent with the articles, by a vote of two-thirds of the shares present or represented. Shareholders should meet annually in June to consider the affairs of the company, transact such business as they might inaugurate and as might be submitted by the trustees. The members of the board of trustees were at all times to be subject to the orders of the shareholders, who might at any time and for any cause, by a vote of a majority of all the shares then issued and outstanding, remove any one or all of them from office, and appoint and devolve upon other members the duties and functions of the office. No trustee should be liable for any fraud, or error, or negligence of a cotrustee, to which he had not been a party, and there was a method provided by which he might relieve himself from liability to the shareholders for any act of the board which he had not approved. $40,000 of the capital stock should be paid by conveying to the six trustees an oil and gas lease; the balance of the $60,000 was to be paid in cash. The stock of the association could be increased at any time by a vote of the majority of the stockholders present. Dissolution could be effected by a vote of three-fourths of the shares, provided there were no outstanding bonds or obligations secured by mortgage of the company's property.

(b) That the tax was collected from the plaintiff in the manner and amount alleged in the petition.

(c) That legal demand had been made for the return thereof as required by the law.

(d) That about 200 persons were interested and were certificate holders in the association, and the certificates of the association were traded in generally by the public.

[1] First. The Revenue Act of 1918, in section 1 of title 1 (Comp. St. Ann. Supp. 1919, § 6371¼a), provides that—

"The term 'person' includes partnerships and corporations, as well as individuals; the term 'corporation' includes associations, joint-stock companies, and insurance companies."

Section 218 of the same act (section 6336⅛i) provides:

"That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in

computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year. * * *"

The latter paragraph of section 335 of subdivision c of the same act (section 6336$^{7}/_{16}$n) reads as follows:

"Any tax paid by a partnership or personal service corporation for any period beginning on or after January 1, 1918, shall be immediately refunded to the partnership or corporation as a tax erroneously or illegally collected."

Without presenting the provisions which relate to the tax to be paid by corporations, associations, and joint-stock companies, it is manifest from the above provisions that partnerships are to pay the income tax through the persons who compose it, while the corporation, association, and joint-stock company is to pay the tax as entities of so many taxable persons; the corporation, association, and joint-stock company is, itself, the taxable entity or person.

May an aggregation of individuals be both a partnership and an association; be both a partnership and a joint-stock company? If so, how are such individuals to be reached? If the taxable profit be made by a corporation or an association or a joint-stock company, then either of the three must pay the tax before the individuals who are entitled to the profits of either receive that which is theirs, and, after receiving it, it must again be accounted for in such individual income tax return and payment. The profit of a partnership, however, is then and there and at that time the profit of the partner and is taxed as such and not as the profit of any artificial person.

It was clearly the intention of the Congress that that difference was to be well marked.

The plaintiff contends that, since decisions of this court and of the state courts of Texas, and for that matter courts of a majority of the states of the Union, hold organizations, such as the plaintiff, a partnership, it may not be said to be a corporation, or a joint-stock company, or an association. Merchants' National Bank v. Wehrmann, 202 U. S. 295, 26 Sup. Ct. 613, 50 L. Ed. 1036; Claggett v. Kilbourne, 66 U. S. (1 Black) 346, 17 L. Ed. 213; Crocker v. Malley, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601; Eliot v. Freeman, 220 U. S. 178, 31 Sup. Ct. 360, 55 L. Ed. 424; In re Ballard (D. C.) 279 Fed. 574; Malley v. Howard (C. C. A.) 281 Fed. 363; In re Associated Trust (D. C.) 222 Fed. 1012; Chicago Title & Trust Co. v. Smietanka (D. C.) 275 Fed. 60; Malley v. Bowditch, 259 Fed. 809, 170 C. C. A. 609, 7 A. L. R. 608; In re Parker (D. C.) 275 Fed. 868; Roberts v. Anderson, 226 Fed. 7, 141 C. C. A. 121; Industrial Lumber Co. v. Texas Pine Land Assn. (Tex. Civ. App.) 72 S. W. 875; McCamey v. Hollister Oil Co. (Tex. Civ. App.) 241 S. W. 689; West Side Oil Co. v. McDorman (Tex. Civ. App.) 244 S. W. 167; Slaughter v. American Baptist Publication Society (Tex. Civ. App.) 150 S. W. 224; Fisheries Co. et al. v. McCoy (Tex. Civ. App.) 202 S. W. 343; Wells v. Mackay Telegraph Co. (Tex. Civ. App.) 239 S. W. 1001; Hardee v. Adams Oil Assn. (Tex. Civ. App.) 254 S. W. 602; Willis v. Greiner (Tex. Civ. App.) 26 S. W. 858; Burton v. Grand Rapids Co., 10 Tex. Civ. App.

270, 31 S. W. 91; Dee v. Taylor (Tex. Civ. App.) 227 S. W. 361; Davis v. Hudgins (Tex. Civ. App.) 225 S. W. 73; Morehead v. Greenville Bank (Tex. Civ. App.) 243 S. W. 546; Wrightington (2d. Ed.) on Unincorporated Associations and Business Trusts.

No debate can follow the assertion that the trustees of such association, and probably the members thereof, are liable for debts to third parties; but when they are viewed from a taxing standpoint and in that herding where the accepted classification puts them as well-known and distinctive commercial enterprises, they wear, likewise, another label, another livery, another name.

The mere fact that the membership in such an association or joint-stock company would be liable for a tort or for a debt, or that the ownership of the property might not seem to change, would not, of itself, divest such association or joint-stock company of its standing as an association or joint-stock company. In other words, such aggregations of men have some points of similarity with partnerships; more points of similarity with partnerships than do corporations, and yet, in one sense, the corporation is also a partnership, even though it is always recognized as legally free from and independent thereof and stands and is to be treated as an artificial person. Nowhere in the articles of association is the plaintiff referred to as a partnership; this suit is not brought as a partnership; the owners of it do not appear here and sue in their individual capacities. They come here under article 6149 of the Revised Statutes of Texas, which authorize an association or joint-stock company to sue and be sued. An unincorporated company, fundamentally a large partnership, may be said to be an association, and with certain provisions may be said to be a joint-stock company, and it will differ mainly from a partnership in that it is not bound by the acts of the individual partners, but only by those of its managers; that its shares are transferable; and that it is not dissolved by the retirement, death, bankruptcy, etc., of its individual members.

A joint-stock company at common law was hybrid, midway between a corporation and a partnership, having some of the characteristics of each; but there was no delectus personæ. From lexicographers, and decisions gathered therein, we may safely say that such associations are not pure partnerships, nor are they pure corporations; not the first, because their members are recognized as an aggregate body; not the second, for their members are more or less liable to contribute to the debts of the collective whole.

Mr. Justice Gray, in Karrick v. Hannaman, 168 U. S. 334, 18 Sup. Ct. 138, 42 L. Ed. 484, defines "partnership" as follows:

"A contract of partnership is one by which two or more persons agree to carry on a business for their common benefit, each contributing property or services, and having a community of interest in the profits. It is in effect a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his copartner."

A partnership which does not have the characteristics of an association or of a joint-stock company is merely a partnership. When it has such characteristics, it becomes that whose character it has. As such it comes within the provisions of the law which relate to it.

296 F.—32

A cow is no less a cow because it is black. An association, and a joint-stock company, are no less such association, or joint-stock company, because they may possess a similitude to a partnership. It is difficult to build an entity, so far as organizations for carrying on the business of the world is concerned, without there being some similarity between such organizations; but general similarities do not determine, either the character, or the name thereof, both being dependent upon the distinguishing characteristics for definition and classification.

In Haiku Sugar Co. v. Johnstone, 249 Fed. 103, 161 C. C. A. 155, the Circuit Court for the Ninth Circuit, in writing about this troublesome subject, said:

"This is the pivotal point in the case, for in making distinction between joint-stock associations and partnerships Congress must have had in mind that there are substantial points of difference between such relationships. It is noticeable that the arrangement under examination lacks the element of changeability of membership or transferability of shares, an element often used as a determining criterion as between ordinary partnerships and joint-stock companies. Bates on Partnership, § 72. * * * In a joint-stock company the members have no right to decide what new members shall be admitted to the firm; on the other hand, the right of delectus personarum is an inherent quality of the ordinary partnership. * * * A joint-stock company often consists of a large number of persons, between whom there is no special relationship of confidence; the retirement or death of a member works no dissolution; while a partnership, although it may consist of several persons, generally is made up of a few, who are drawn to each other by feelings of mutual confidence, and no member is at liberty to retire and substitute another as a partner. In a joint-stock company the business is generally managed by directors or other designated officers of the association, and a shareholder as such is without power to contract for the company; whereas, in a partnership any member may bind the partnership."

[2] Second. That this is the construction of the statute that has been given by an executive department of the government is also important. The courts give great weight to a construction placed upon an act of the Congress by the Executive Department which is charged with the duty of carrying it into effect.

Not a controlling weight, but strongly persuasive: United States v. Hermanos, 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821; United States v. Finnell, 185 U. S. 236, 22 Sup. Ct. 633, 46 L. Ed. 890; United States v. Alabama Co., 142 U. S. 615, 12 Sup. Ct. 306, 35 L. Ed. 1134; Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363; Schell v. Fauche, 138 U. S. 562, 11 Sup. Ct. 376, 34 L. Ed. 1040; Robertson v. Downing, 127 U. S. 607, 8 Sup. Ct. 1328, 32 L. Ed. 269; United States v. Johnston, 124 U. S. 236, 8 Sup. Ct. 446, 31 L. Ed. 389; United States v. Hill, 120 U. S. 169, 7 Sup. Ct. 510, 30 L. Ed. 627; Brown v. U. S., 113 U. S. 568, 5 Sup. Ct. 648, 28 L. Ed. 1079; United States v. Moore, 95 U. S. 760, 24 L. Ed. 588; Swift v. U. S., 105 U. S. 691, 26 L. Ed. 1108.

Third. The plaintiff contends that the Commissioner of Internal Revenue, in article 1501 of the regulations promulgated with reference to the act of 1918, attempted to legislate. Such regulation is as follows:

"The statute recognizes three chief classes of persons, to wit, individuals, partnerships and corporations. Corporations, include associations, joint-stock companies, and insurance companies, but not partnerships properly so called."

It is contended that the phrase "properly so called," limits and defines partnerships in a way that the Congress neither limited or defined.

[3] While it has been settled that regulations made in pursuance of statutory authority have the force and effect of the law (Maryland Casualty Co. v. United States, 251 U. S. 342, 40 Sup. Ct. 155, 64 L. Ed. 297; United States v. Eliason, 16 Pet. 291, 10 L. Ed. 968; Ex parte Reed, 100 U. S. 13, 25 L. Ed. 538; United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591; Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; In re Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813), the Congress alone has the power to legislate (Constitution, art. 1, § 1). It alone has the power to lay taxes. Article 1, § 8. It may not delegate this power. Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267; United States v. United Verde Copper Co., 196 U. S. 207, 25 Sup. Ct. 222, 49 L. Ed. 449; United States v. Butter, 195 Fed. 657, 115 C. C. A. 463.

[4] But when the internal revenue office explained in this regulation its understanding of the statute it was not legislating. It was enforcing.

[5] That the Congress, after this construction, passed a similar law with the exact wording would certainly indicate that it was satisfied with the construction and definition that the Executive Department had placed on its act. Fisk v. Henarie, 142 U. S. 459, 12 Sup. Ct. 207, 35 L. Ed. 1080; Edwards v. Wabash Co. (C. C. A.) 264 Fed. 610.

[6] Fourth. It is contended that this construction gives an unconstitutional tinge to the act. As, for instance, when such a tax is imposed upon a member by reason of an alleged income, and such individual member is in fact without a net income, the tax, instead of being an income tax, within the Sixteenth Amendment, is a direct tax, which, under article 1, § 2, cl. 3, and article 1, § 9, cl. 4, of the Constitution of the United States, must be proportioned in accordance with the population of the several states.

The Sixteenth Amendment to the constitution provides:

"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

A graduated income tax is constitutional. Brushaber v. U. P. R. R., 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Realty Co. v. Anderson, 240 U. S. 115, 36 Sup. Ct. 281, 60 L. Ed. 554.

[7] A person, in order to question the constitutionality of a statute, must show that the alleged unconstitutional feature injures him, and, in fact, deprives him of rights secured to him by the Constitution. Panama R. Co. v. Johnson (C. C. A.) 289 Fed. 964.

[8, 9] The stockholders of the plaintiff, whose rights are said to be affected in this case, and for whom the plaintiff is solicitious in this suit, are not parties to this litigation and would not be bound by any

determination reached herein. Therefore the constitutional question raised by the amended bill and the very learned argument thereon is not in the case. It might be observed, however, that a statute is not to be interpreted unconstitutional if such interpretation can be reasonably avoided. Insurance Co. v. Kelly (C. C. A.) 282 Fed. 772.

[10] And the presumption is that a statute is constitutional. Power Co. v. Power Co. (D. C.) 283 Fed. 606; Trade Com. v. Lorillard (D. C.) 283 Fed. 999; United States v. Gordin (D. C.) 287 Fed. 565; Railway Co. v. U. S. (D. C.) 287 Fed. 728.

In the case of LaBelle Iron Works v. U. S., 256 U. S. 377, 41 Sup. Ct. 528, 65 L. Ed. 998, the court said:

"The construction of the excess profits tax provisions as basing the tax on invested capital, which is determined only by the value of the assets at the time of their acquisition, to the exclusion of subsequent increase of value, does not deprive the tax payer of due process of law, since equality of taxation can never be attained, and the tax in question applies equally to all corporations similarly situated."

[11] The observation applies, likewise, to the tax imposed on joint-stock associations because it applies equally to all such companies similarly situated, and is therefore uniform.

It follows from what has been said that recovery by the plaintiff will be denied, and judgment may be drawn for the defendant.