JEFFERSON GAS COAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 4393.

Circuit Court of Appeals, Third Circuit.

Aug. 19, 1931.

James S. Y. Ivins, of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewell Key and John H. McEvers, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. N. Shaw, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This case arose out of the refusal of the Commissioner of Internal Revenue to allow as deduction in its income tax return $31,000 paid as so-called rentals, or minimum royalty, on coal mined and to be mined from lands leased to the petitioner for the years 1921, 1922, and 1923, and out of his refusal to allow as a deduction the payment of a premium of $2,429.37 paid for the year 1921 on compensation insurance under the laws of Pennsylvania. The petitioner contends that the payments were ordinary and necessary expenses paid or incurred in the taxable years in carrying on the trade or business under section 234 (a) (1) of the Revenue Act of 1918 (40 Stat. 1077), which provides: "(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity." The above section is identical with section 234 (a) (1) of the Revenue Act of 1921 (42 Stat. 254).

The petitioner is a Pennsylvania corporation engaged in the coal brokerage business at Pittsburgh.

On September 1, 1920, T. A. Miller and Ella S. Miller, his wife, owned certain coal lands in Pennsylvania. On that date they entered into a written agreement with the petitioner wherein it was provided that the petitioner would pay to them on September 1, 1921, and annually thereafter on September 1st up to and including September 1, 1930, making ten payments in all, 12 cents per ton on a minimum tonnage of 258,333⅓ tons each year amounting to $31,000, together with all taxes; that if the petitioner did not mine from the land each year the minimum tonnage of 258,333⅓ tons, it nevertheless should pay the 12 cents a ton on that amount every year until the expiration of the so-called lease; that if more than the minimum of 258,333⅓ tons was mined in any year, the petitioner would pay for the excess at the rate of 12 cents a ton, and this excess would be credited on the total payments of $310,-000; that when the last payment was made, the Millers would for the additional sum of $1 execute and deliver to the petitioner, its successors and assigns, a deed in fee simple, clear of all incumbrances, for the unmined coal in and under the lands in question.

After the execution of the agreement, the petitioner entered upon the land and began mining the coal. For the fiscal years ended August 31, 1921, 1922, and 1923, it mined 400 tons, 33,010 tons, and 176,796 tons, respectively, but it paid $31,000, or the full minimum royalty on the tonnage of $258,-333⅓ tons each year and deducted the $31,-000 annually as "necessary expenses paid or

incurred during the taxable year in carrying on" its business of mining. The Commissioner allowed as a deduction each year only the value of the coal actually mined, which aggregated $25,176.72 for the three years. The petitioner, however, claims a deduction of $93,000.

If this contract was a lease and the annual payments of $31,000 were rentals, then under the act the deduction should have been allowed as claimed, but if this so-called lease was in fact a contract of sale, and the annual payments were capital expenditures, then a deduction for the value of the coal actually mined only should have been allowed. ·

The intent of the parties, whether the instrument was intended as a lease or a sale, must be gathered from the writing itself, for no other evidence was submitted of their intent.

We agree with the Board that the provisions in the agreement that when the annual royalties amounting to $310,000 had been paid, the Millers were to execute and deliver a deed in fee simple for all unmined coal and that the petitioner was compelled to pay the $310,000 within the ten years irrespective of the quantity of coal actually mined, are entirely foreign to an actual, bona fide lease and show the true nature of the agreement to be a contract of sale rather than a lease. These statutory deductions are allowed only for ordinary and necessary expenses paid during the taxable year in carrying on the trade or business, including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation *has not taken* or is *not taking title*, or *in which it has no equity*. The deductions claimed can be justified only upon the basis that by this contract providing for these annual payments, the petitioner was not taking title to the unmined coal and had "no equity" in it, which is contrary to the fact and clear intention of the parties. During the three years of 1921, 1922, and 1923, the petitioner paid $93,000; whereas the value of the coal in place which was actually mined was only $25,176.72. In other words, it paid an excess of $67,823.28 and had an equity at least to that extent in the unmined coal.

While the agreement is called a "lease," the real character of an instrument must be determined from the intention of the parties as gathered from a fair interpretation of the instrument as a whole. Kauffman v. Raeder (C. C. A.) 108 F. 171, 54 L. R. A. 247; Bur-

kett v. Commissioner (C. C. A.) 31 F.(2d) 667, 668; Hervey et al. v. R. I. Locomotive Works, 93 U. S. 664, 673, 23 L. Ed. 1003; Heryford v. Davis, 102 U. S. 235, 26 L. Ed. 160; United States v. Phellis, 257 U. S. 156, 168, 42 S. Ct. 63, 66 L. Ed. 180. Looking at the instrument as a whole and the object sought to be obtained, that it is a contract of sale of coal in place and not a lease is inescapable. Rosenberger v. McCaughn, Collector (C. C. A.) 25 F.(2d) 699, 700.

In the fiscal year ended August 31, 1921, the petitioner paid $2,429.37 as workmen's compensation insurance in accordance with the requirement of the statute of Pennsylvania. This was treated by the Board as money spent in the development of a capital asset and so not deductible as an ordinary and necessary expense in carrying on the business for that year. The Commissioner says that the labor which it insured against accident was employed in the development of the property as a "drift mine," but it was also employed in operating the mine "by the stripping process," and 400 tons of coal was accordingly removed from the mines that year. Assuming, without deciding, that the labor employed in the development of the mine up to the time that coal began to be taken out of the mine was an expense in the development of a capital asset and not deductible (Brier Hill Collieries v. Commissioner, 12 B. T. A. 500, 509; White Ash Coal Company v. Commissioner, 10 B. T. A. 942), the question is whether or not workmen's compensation insurance should be so treated, or whether it should not rather be treated on the principle of taxes on a capital asset or the cost of earned insurance—an annual recurring expense. It is a necessary annual expense imposed, as are taxes, by state statute, and as such adds nothing to the capital asset. In this respect it differs from labor. This interpretation in principle seems to be in accord with Regulation 45, Article 294, interpreting section 215 (a) (4) of the Revenue Act of 1921 (42 Stat. 242) to the effect that if a taxpayer is not a beneficiary under a policy insuring his employees, the premiums paid are allowable deductions. The Regulation provides that: "If, however, the taxpayer is in no sense a beneficiary under such policy, except as he may derive benefit from the increased efficiency of the officer or employee, premiums so paid are allowable deductions." The subsequent revenue acts of Congress contain a similar provision, which indicates that Congress is satisfied with the executive construction of the Act. Burk-

Waggoner Oil Association v. Hopkins (D. C.) 296 F. 492; Id., 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183.

Accordingly, the redetermination of the Board is affirmed as to disallowance of annual deductions of $31,000, but it is reversed and the return of the petitioner approved as to the deduction of compensation insurance of $2,429.37.