**COMAR OIL CO. v. BURNET, Commissioner of Internal Revenue.**

No. 9532.

Circuit Court of Appeals, Eighth Circuit.

April 17, 1933.

Rehearing Denied May 31, 1933.

Truman Post Young, of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for petitioner.

Hayner N. Larson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John H. Pigg, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE, VAN VALKENBURGH and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is a petition by the Comar Oil Company for review of an order and decision of the Board of Tax Appeals rendered November 10, 1931, which redetermined the deficiency in the income taxes of petitioner for the calendar year 1923 at the sum of $96,579.88, thereby approving the determination of the Commissioner of Internal Revenue.

The facts are not in dispute. They are set out in the findings of the Board of Tax Appeals, which are as follows:

"Findings of Fact.

"The petitioner is a corporation with its principal office in St. Louis, Missouri. It is engaged in the production of oil and gas and in the acquisition of oil and gas leases.

"On July 26, 1921, the Goldelline Oil Corporation and Errett R. Newby, owners of a certain oil and gas lease, transferred that lease to the petitioner by an instrument duly signed and acknowledged. That instrument contained the following provisions:

"Whereas, on the 26th day of July, 1921, a certain oil and gas mining lease was made and entered into by and between Caswell C. Endicott and Laura A. Endicott, husband and wife, Lessors, and the Marland Refining Company, a corporation, Lessee, covering the following described land in the County of Kay, State of Oklahoma, to-wit: * * * said lease being recorded in the office of the County Clerk in and for said County in book 46 at page 36; and

"Whereas, the said lease and all rights thereunder or incident thereto are owned by the Goldelline Oil Corporation, of Oklahoma, an undivided one-half interest, and Errett R. Newby, an undivided one-half interest;

"Now Therefore, for and in consideration of the sum of Fifty Thousand ($50,000.00) Dollars in hand paid to the assignors herein by the Comar Oil Company, assignee

hereunder, the receipt of which is hereby acknowledged, and the additional sum of One Hundred Thousand ($100,000.00) Dollars net to be paid out of the oil and gas as hereinafter set out, the undersigned, the present owners of said lease and all rights thereunder or incident thereto, do hereby bargain, sell, transfer, assign and convey unto the Comar Oil Company, all of the right, title and interest of the original lessee and present owners in and to the said lease and rights thereunder, in so far as it covers the following described lands, to-wit: * * * together with all personal property used or obtained in connection therewith to the Comar Oil Company and its successors and assigns.

"The above mentioned sum of $100,000.00 net shall be paid to the assignors herein out of one-eighth of the gross production of oil and gas produced from said property, by the assignees or its assigns, * * *

"It is understood that a lien is hereby retained by first parties on said one-eighth of the oil and gas until said sum of $100,000.00 is paid.

. "And for the same consideration, the undersigned for themselves and their heirs, successors and assigns, do covenant with the said assignee, its successors or assigns, that they are the lawful owners of the said lease and rights and interests thereunder and of the personal property thereon or used in connection therewith; that the undersigned has good right and authority to sell and convey the same and that all rentals and royalties due and payable thereunder have been duly paid.

"In Witness Whereof, The undersigned owners and assignors have signed and sealed this instrument this 15th day of July, 1922.

"On October 5, 1922, Henry Rosenthal, owner of a certain oil and gas lease, conveyed that lease to the petitioner by an instrument, duly signed and acknowledged, containing the following clause: * * *

"That the first party hereto has this day bargained, sold and assigned and transferred to second party hereto, all of his interest in the said oil and gas lease upon said lands hereinabove described, same being an undivided one-fourth interest, for the consideration of One Hundred Thousand ($100,000.00) Dollars cash, and Fifty Thousand ($50,000.00) Dollars to be paid to the party of the first part by party of the second part out of one-half of their portion of the first oil or gas produced, same to be made when and as the oil is sold. * * *

"On November 20, 1922, a written agreement was entered into between Alcorn Oil Company and the petitioner, whereby Alcorn Oil Company assigned to petitioner three designated oil and gas leases. The pertinent provisions of the agreement read: * * *

"Third: The party of the second part agrees to pay for said three leases the sum of Three Million Dollars, ($3,000,000.00); One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) shall be paid in cash upon the approval of titles as above provided, the balance, amounting to One Million Two Hundred Fifty Thousand Dollars, ($1,250,000.00) shall be paid by Comar out of fifty per cent (50%) of the oil produced as represented by the working interest in said properties. The title to all of the working interest in the oil produced from said properties subsequent to the date of this agreement shall be in Comar Oil Company, and as oil is produced Comar Oil Company shall pay to the Alcorn Oil Company sums of money equivalent to the value of Fifty per cent (50%) of the oil produced, as aforesaid. * * *

"All the leases above mentioned were, at the times when acquired by petitioner, located in unproven and undeveloped territory, although drilling operations had been started on some of the leased lands.

"Pursuant to the terms of the above mentioned instruments, petitioner paid during 1923, out of proceeds from oil and gas produced from said leased territories, the following amounts:

| | |
|---|---:|
| To Goldelline Oil Corporation | $ 100,000.00 |
| To Henry Rosenthal | 43,104.02 |
| To Alcorn Oil Company | 1,247,001.22 |
| | $1,390,105.24 |

(y) ("In its income tax return for 1923 all amounts collected from the sale of oil and gas produced were included in gross income by the petitioner, who treated the above payments as capital expenses and made no deduction respecting them. The respondent accepted that treatment of those expenditures, but disallowed $1,107,487.69 of the amount claimed by the petitioner as a depletion deduction.)

"It is conceded by petitioner that, if its payments in 1923 on account of the leases, amounting to $1,390,105.24, are capital transactions then the respondent's determination as to depletion deductions is correct.

"All of the leased oil lands involved were located in Oklahoma, and each instrument in

question was executed according to the requirements in that State for executing conveyances of interests in land."

Petitioner has pointed out that the finding which we have marked "y" is likely to cause confusion and misunderstanding unless accompanied by petitioner's explanation, which we have set out in the margin.[1]

The broad question involved in this appeal is whether the payments by petitioner to Goldelline Oil Corporation, Henry Rosenthal, and the Alcorn Oil Company should be included in the taxable income of petitioner. This question, in the argument of petitioner, is subdivided into two: (1) Whether the payments were proper to be included in the income of petitioner at all; (2) whether, if they were so included, they should not have been thereafter eliminated as allowable deductions.

### Gross Income.

The relevant sections of the 1921 Revenue Act (42 Stat. 227) pertaining to gross income, net income and deductions are set out in the margin.[2]

It will be apparent upon examination of the statute (section 213 (a) that the term "gross income" is broad in scope; broad enough to include, in the case of a lessor, rents or royalties paid to him by the lessee, Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460; United States v. Biwabik Mining Co., 247 U. S. 116, 38 S. Ct. 462, 62 L. Ed. 1017; Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. ——; Burnet v. Harmel, 287 U. S. 103, 53 S. Ct. 74, 77 L. Ed. ——; broad enough also to include, in the case of a lessee, rents or royalties paid by him to the lessor owner; and the practice has been to include them as gross income in the return. United States v. Boston & Providence R. R. Corp. (C. C. A.)

---

[1] "The fact that the original return did not make any deduction on account of these royalty payments is explained in the original petition filed with the Board of Tax Appeals. The original return showed a net loss in any case and therefore the Comar Oil Company was not interested in examining the accounts to see that all allowable deductions were properly made. If the year's operation showed a net loss, there would be no tax anyway, and, for this reason, the original return was filed with no effort to deduct the overriding royalty payments. But the Commissioner's deficiency letter disallowed depletion in the sum of $1,107,487.69, with the result that a net income was shown amounting to $823,592.62. When this deficiency letter was received it then became important to more carefully examine the return, and such examination disclosed that no deductions had been made on account of overriding royalty payments. Under these circumstances we do not believe that the fact that no deduction was made on account of these payments in the original return is in any way binding upon the petitioner, nor does it seem to us to be correct to say that the petitioner treated the payments as capital expenses, or that the method of treating such payments, as a matter of bookkeeping, is of weight in considering the question."

[2] "Sec. 232. That in the case of a corporation subject to the tax imposed by section 230 the term 'net income' means the gross income as defined in section 233 less the deductions allowed by section 234. * * *"

"Sec. 233. (a) That in the case of a corporation subject to the tax imposed by section 230 the term 'gross income' means the gross income as defined in sections 213 and 217. * * *"

"Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Colum-

bia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

"(b) Does not include the following items, which shall be exempt from taxation under this title:"

[Here follows a list of 12 items not to be included in gross income. None of the items are relevant to the present controversy.]

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity; * * *

"(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: Provided, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date: Provided further, That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter: And provided further, That such depletion allowance based on discovery value shall not exceed the net income, computed without allowance for depletion, from the property upon which the discovery is made, except where such net income so computed is less than the depletion allowance based on cost or fair market value as of March 1, 1913; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee."

968

37 F.(2d) 670; International Textbook Co. v. United States (Ct. Cl.) 44 F.(2d) 254; Baton Coal Co. v. Commissioner of Internal Revenue (C. C. A.) 51 F.(2d) 469; Jefferson Gas Coal Co. v. Commissioner of Internal Revenue (C. C. A.) 52 F.(2d) 120; Davison v. Commissioner of Internal Revenue (C. C. A.) 60 F.(2d) 50; Merillat v. Commissioner, 9 B. T. A. 813; Kekaha Sugar Co., Ltd., v. Commissioner, 13 B. T. A. 690; Ferguson v. Commissioner, 20 B. T. A. 130.

In the case at bar, the payments in controversy were made by the assignee of the original lessees to said assignor lessees and the payments are called "overriding royalties."

It is one of the contentions of petitioner that these overriding royalties should be treated in the same manner as the original royalties. We think this contention is sound in so far as it results in the inclusion of both the original royalties and the overriding royalties in the category of "gross income."

We are not insensible to the forceful argument of petitioner that neither original royalties nor overriding royalties should be included in gross income of the lessee, sublessee, or transferee. The argument is one, however, which we think should more properly be presented to the Congress than to the courts. The inclusion of royalties in the gross income of the lessee not only finds support in the language of sections 233 and 213 of the Revenue Act of 1921, but also in the actual practice as established during a considerable number of years. See cases cited above. Overriding royalties were included by petitioner in its gross income in the original return in the case at bar.

We conclude that the overriding royalties were properly included in the gross income of petitioner.

### Net Income.

Net or taxable income is gross income less statutory deductions. The deductions are not a matter of right but a matter of grace. The Statute (section 234 (a) (1) is to be construed by giving to the language its plain, ordinary meaning.

We think the statute makes plain distinction between rentals or other payments for the continued use or possession of property to which the taxpayer has not taken title or in which it has no equity on the one hand, and rentals or other payments for the continued use or possession of property to which the taxpayer has taken title or in which it has

an equity on the other hand. The former rentals are deductible; the latter are not.

What the reason for the distinction is, we are not called upon to decide. It may be that the Congress thought that, in the latter class of cases, the depletion allowance provided in section 234 (a) (9) could be made and would be sufficient. See Palmer v. Bender, 287 U. S. 551, 53 S. Ct. 225, 77. L. Ed. ——. Whatever the reason for it, the distinction, we think, exists.

In the case at bar, it is clear that title to the property was taken by the petitioner.

Our conclusion is that the deductions claimed by petitioner were properly disallowed by the Board of Tax Appeals, and the petition for review of its decision and order is accordingly dismissed.